## THE BUCKLEIGH.

### BOERA et al. v. BUCKLEIGH et al.

(District Court, E. D. New York. August 20, 1924.)

**1. Shipping ⬥121(1)—Crates of onions with contents visible charged carrier with notice and bound it to furnish vessel seaworthy for cargo.**

Where onions were shipped in crates constructed so as to make their contents visible, the carrier was put upon notice and was bound to furnish a vessel seaworthy for the conveyance of a cargo of that nature.

**2. Shipping ⬥132(5)—Evidence of navigation in dense fog, resulting in vessel grounding and delay causing injury to onion cargo, held to require finding of gross negligence.**

Evidence of manner of navigation of vessel in dense fog, as a result of which she ran aground and was delayed for considerable period, during which time cargo of onions sprouted and deteriorated in value, *held* to require a finding of gross negligence in navigation of vessel.

**3. Shipping ⬥131, 186—General average not ordered where damage to cargo by delay was caused by gross negligence in navigation.**

Where cargo of onions was damaged by delay caused by gross negligence in navigation of vessel, resulting in ship going aground, general average will not be ordered, but libelant should recover difference between market value of goods at place of delivery in good condition and net amount realized from sale of goods in their damaged condition.

**4. Shipping ⬥53—Under contract of affreightment, decree for damages to cargo for delay will run against owner of ship, not against charterer.**

Where charter was a contract of affreightment and not a demise, the owner remaining in possession of ship and her cargo, he was responsible for safe carriage of cargo, and decree for damages to cargo by negligent delay will go against claimant and not against charterer.

In Admiralty. Libel by Alvaro Boera and another, copartners doing business as Boera Bros., against the steamship Buckleigh, her engines, etc., Baldassare Longe, claimant, in which the Campagnie Francaise de Navigation a Vapeur (Fabre Line) was impleaded. Decree for libelants against claimant, and petition dismissed as against impleaded respondent.

Finkler & McEntire, of New York City, for libelants.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (L. De Grove Potter, of New York City, of counsel), for claimant.

Burlingham, Veeder, Masten & Fearey, of New York City (John L. Galey, of New York City, of counsel), for impleaded respondent.

GARVIN, District Judge. Libelants have brought an action in admiralty and have filed a libel against the steamship Buckleigh to recover for damages received by a shipment of onions from Spain to New York City. The owner of the Buckleigh has interpleaded the charterer, the Fabre Line, on three grounds:

(1) The cargo was loaded and discharged by the servants of said line.

(2) Under the terms of the charter, the charterer assumed liability for bad stowage and improper or insufficient dunnage, and

(3) The ship's officers acted as the servants of the charterers in connection with the stowing, carriage, and delivery of the cargo.

[1, 2] It seems to be clearly established by a preponderance of credible testimony that the onions were in good condition when shipped, and that they were very badly damaged when they arrived in New York. It further appears that they were shipped in crates constructed so as to make their contents visible. Thus the carrier was put upon notice and was bound to furnish a vessel seaworthy for the conveyance of a cargo of that nature. There was some testimony that the damage was caused in great part by sweat which results from condensation taking place in the holds. This lies in beads on the steel deck and during the voyage drips from the beams. Even if the court were not justified in finding that the vessel was unseaworthy, for the reason given, the case must be decided because of the manner in which the vessel was navigated and the unreasonable delay in reaching port, which resulted in the shipment arriving in a condition unfit for use to a great extent, which condition would not have developed if the cargo had been delivered in the time usually required for such a voyage.

The vessel came over from Valencia, Spain, reaching the Jersey coast, off Barnegat, March 16, 1923, shortly after noon. There she altered her course so as to come up to the New York Harbor. Instead of taking the usual and customary course, the

weather being very foggy, she veered off to the northeast, and finally brought up off Jones Inlet near Long Beach, where she went aground at 5 o'clock the same day. There she remained until March 30, arriving at her pier March 31st. Her cargo was finally completely discharged on April 10th. The shipment consisted of 4,451 crates, 300 half cases, and 336 cases. The board of health condemned 1,420 crates, 193 half cases, and 46 cases.

The Buckleigh started to run up from Barnegat, covering a distance of 50 miles, in less than five hours, which was at a rate about equivalent to her full speed. Some of the witnesses for the vessel stated that she went much slower, but it does not appear that she ever attempted to anchor, although she was navigating in a dense fog. It does not seem to the court that there can be any conclusion except that there was gross negligence in operating the vessel, as a result of which she ran aground, was delayed for a considerable period as a result thereof, during which time the onions, which would otherwise have been landed in good condition, sprouted to such an extent that they were badly damaged. A reading of the testimony brings one irresistibly to the conclusion that there was negligence in the navigation of the vessel.

[3] It does not seem to the court that a general average should be ordered in view of the finding that the vessel was guilty of negligence. If the court is correct in its conclusion, the libelants should have a decree for the damage which they have sustained, based on the difference between the market value of the goods at the Port of New York, the place of delivery, in good condition, and the net amount realized from the sale of the goods; i. e. their value in their damaged condition. If the parties cannot agree upon the amount, as a result of the testimony taken at the trial, the court will refer the matter to a commissioner.

[4] There will be a decree for the libelant against the claimant for the reason that the charter here was a contract of affreightment and not a demise. The owner remained in possession of the ship and her cargo and was responsible for their safe carriage. Reed v. United States, 11 Wall. 600, 20 L. Ed. 220; Leary v. United States, 14 Wall. 607, 20 L. Ed. 756; New Orleans-Belize Steamship Co. v. United States, 239 U. S. 202, 36 S. Ct. 76, 60 L. Ed. 227; The Claveresk (C. C. A.) 264 F. 276. The petition against the Fabre Line is dismissed.